1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10 | WILLIAM TRAVIS,

Case No. 1:14-cv-00074-SKO (PC)

11 |          Plaintiff,

THIRD SCREENING ORDER DISMISSING
AMENDED COMPLAINT WITH
PREJUDICE FOR FAILURE TO STATE A
CLAIM UNDER SECTION 1983

12 |      v.

13 | CONNIE GIBSON, et al.,

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION
[ECF No. 20]

14 |          Defendants.

15

_____/

16

## I.    Procedural History

Plaintiff William Travis, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 17, 2014.[1]  On July 9, 2014, the Court dismissed Plaintiff's complaint, with leave to amend, for failure to comply with Rule 8(a).  Fed. R. Civ. P. 8(a).  Plaintiff filed an amended complaint on August 11, 2014.  On June 16, 2015, the Court dismissed the First Amended Complaint for failure to state a claim under Section 1983. Plaintiff was granted leave to file a Second Amended Complaint.  On July 20, 2015, Plaintiff filed a Second Amended Complaint ("SAC").

## II.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

---

[1] On February 12, 2014, Plaintiff consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

1  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

2  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

3  seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),

4  (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

5  shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

6  state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

7  A complaint must contain "a short and plain statement of the claim showing that the

8  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

9  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

10  conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937

11  (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

12  courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572

13  F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual

14  allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

15  Under section 1983, Plaintiff must demonstrate that each defendant personally participated

16  in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This

17  requires the presentation of factual allegations sufficient to state a plausible claim for relief.  *Iqbal*,

18  556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners

19  proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and

20  to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

21  (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the

22  plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

23  **III.    Discussion**

24  **A.      Allegations**

25  Plaintiff, who is currently incarcerated at California State Prison-Corcoran ("CSP-

26  Corcoran"), brings this action against the following defendants: Warden Dave Davey; Dr. Jin M.

27  Yu; Dr. Edgar H. Clark; Dr. William P. Convalecer; Dr. Monfore; Family Nurse Practitioner

28  Rouch, Correctional Officer D. G. Hicks; Correctional Officer C. R. Rodriguez; Correctional

1    Officer Melgar; Correctional Sergeant M. Marin; Correctional Sergeant Castillo; Correctional

2    Sergeant M. Godina; and Psychological Technician Casey.  Plaintiff alleges a claim for denial of

3    adequate medical care in violation of the Eighth Amendment.  Plaintiff also alleges claims of

4    failure to protect in violation of the Eighth Amendment and retaliation in violation of the First

5    Amendment.  The events at issue occurred at CSP-Corcoran in 2013 and 2014.

6           On September 7, 2013, Plaintiff received a quarterly package from Walkenhorst, an

7    outside vendor.  The package had been opened and then re-taped.  Plaintiff notified Officer

8    Rodriguez.  The next day, Plaintiff ate a bowl of cereal and drank a cup of coffee from his

9    quarterly package, and he immediately experienced chest pain and respiratory complications.

10          Plaintiff filed a medical slip with Psychiatric Technician Perez on September 8, 2013,

11   complaining about his heart; and he filed another slip with Psychiatric Technician Casey on

12   September 9, 2013.  When Plaintiff asked why he had not been seen by a doctor, Casey told him

13   no one wanted to help him.

14          On September 14, 2013, Plaintiff and his cellmate, Michael Anthony Jenkins, had coffee

15   and frosted flakes, immediately after which they experienced heart palpitations.

16          On September 16, 2013, Plaintiff filed an inmate appeal regarding his heart, and he was

17   seen by Defendant Convalecer on September 18, 2013.  Plaintiff received an x-ray and an EKG.

18   Although Plaintiff alleges that his EKG was abnormal, the medical records he cited in support of

19   that allegation contradict it, evidencing normal x-rays and an EKG.  (Doc. 15, First Amend.

20   Comp., ¶ 32, Ex. D.)  Plaintiff informed Defendant Convalecer that he was on heart medication

21   because he was being poisoned by correctional staff.  Defendant Convalecer diagnosed Plaintiff

22   with costochondritis and prescribed aspirin and sulindac.

23          On September 20, 2013, Plaintiff was seen by Defendant Rouch regarding his inmate

24   appeal.  Defendant Rouch refused to let Plaintiff see his x-rays, and she would not order a full

25   toxicology screen or refer him to a cardiologist.  Plaintiff explained that he was being poisoned

26   and he needed a toxicology test.  Defendant Rouch said his x-rays were missing and she was not

27   qualified to read his EKG, and she became argumentative when he then questioned why she was

28   responding to his inmate appeal.  Plaintiff informed her that he would appeal her decision to the

1    third level.  The third level appeal was denied.

2           On January 12, 2014, Plaintiff filed another inmate appeal, which was reviewed at the first

3    level by Defendant Yu on January 23, 2014.  Plaintiff told Defendant Yu that he had ingested

4    contaminated food.   He showed Defendant Yu a number of statements from other inmates

5    attesting to the food poisoning.  Plaintiff again requested a toxicology panel, which is authorized

6    in the Daily Operations Manual, section 91050.5.  Plaintiff also complained of pain in his kidney

7    area and his chest.  Defendant Yu examined Plaintiff's navel and said he thought Plaintiff had a

8    hernia.  Plaintiff responded that he had pain in his kidney area, not his navel.  Defendant Yu

9    refused to order a toxicology panel; rather, he ordered a basic chemistry test and documented in

10   the appeal response that blood test for toxins had been ordered. Yu referred Plaintiff to Defendant

11   Monfore for surgery on his navel.[2]  (*Id.*, ¶54.)

12          Plaintiff was then seen by Defendant Monfore.  Plaintiff advised Monfore that he believed

13   his symptoms were consistent with moderate toxic consumption.  Plaintiff stated he was being

14   poisoned slowly by officers Hicks, Rodriguez, and their partners.  Defendant Monfore examined

15   Plaintiff.  He diagnosed Plaintiff with swollen lymph nodes and said he thought Plaintiff had a

16   bacterial chest infection, and he was going to order antibiotics for two weeks to see if that would

17   clear the infection.  Plaintiff was seen Defendant Monfore on April 9, 2014, and Defendant failed

18   to order any bloodwork to determine the source of Plaintiff's chest infection.  Plaintiff also alleges

19   that Defendant Monfore falsified the appeal by negating himself as the second level reviewer

20   while ignoring the request for toxicology.

21          On June 9, 2014, Plaintiff was seen by Defendant Clark for a third-level appeal review.

22   Plaintiff informed Defendant Clark that only a full toxicology test would satisfy him, and he

23   offered to show Defendant Clark a falsified chrono produced by correctional officers pretending to

24   be the Director of Corrections.  Plaintiff said he had multiple blood tests and x-rays disappear in

25   the past and he needed outside lab work because of CSP-Corcoran's history of corruption.

26   Defendant Clark said there was nothing he could do, and he suggested that Plaintiff could sue and

27   have his family get the bloodwork done or contact the Prison Law Office.  Plaintiff told Clark that

28
_____
[2] Plaintiff's exhibits show that Defendant Yu ordered a basic metabolic profile.  (*Id.*, Ex. G.)

1  there was a powdery white substance in his food tray and the food made him sick.  He stated that

2  he knew the correctional officers put power wash in his food trays prior to that incident via

3  warnings from food servers and other correctional officers saying he had a target on his back.

4  Defendant Clark said the toxicology test would not be able to detect the powerwash bleach

5  solution since it had metabolized, and he said he could test Plaintiff for one poison but Plaintiff

6  needed to know what it is.  Plaintiff requested to be tested for high levels of arsenic, which is

7  powdery and white and causes similar symptoms.  On July 25, 2014, Defendant Clark ordered the

8  arsenic test and Plaintiff's blood was drawn to be sent to Quest Lab.  On July 31, 2014, Plaintiff

9  was summoned back to the clinic for another arsenic test.  Upon inquiry, he was informed that the

10  previous sample was put in the wrong vial.  Plaintiff filed an appeal regarding the lab results.  He

11  was interviewed by Defendant Clark on October 23, 2014.  Clark looked into the medical file for

12  the results of the lab tests but found that the results were missing from the computer.  He contacted

13  Quest Diagnostics and returned with a printout stating "Someone must [sic] didn't want it

14  uploaded to the computer."  The document from Quest stated, "Test not performed, no suitable

15  specimen received on 7-31-14."

16       On July 22, 2014, Plaintiff was leaving the medical line when he was stopped by

17  Defendant Hicks and two unknown officers.  Hicks threatened to move Plaintiff into a cell with

18  someone he had previously moved away from because they did not get along.  Plaintiff stated he

19  would file an injunction if he didn't stop harassing him.  Hicks stated, "You mean injection? Like

20  we inject your food?"  The other two officers then began laughing.  Plaintiff then filed appeals

21  against Hicks and the other two officers.

22       On August 12, 2014, Plaintiff was interviewed by Defendant Castillo regarding his appeal.

23  Plaintiff stated he knew it was against his due process rights for Castillo to be the interviewer

24  because he was implicated in the appeal.  Castillo stated he just wanted to talk.  He informed

25  Plaintiff that he would make his officers stop if Plaintiff signed off and dropped his 602 appeal.

26  Castillo initially signed the appeal but when Plaintiff received it, Castillo's name had been crossed

27  out and Defendant Marin's name had been written next to it.

28       On September 19, 2014, Defendant Marin signed a memorandum stating he met with

5

1  Plaintiff for the First Level of Review.  But Plaintiff never met with Marin or spoke to him.
2  Instead he had met with Castillo.

3  On October 5, 2014, Defendant Godina interviewed Plaintiff concerning the second level
4  of review.  Plaintiff explained he needed an immediate transfer because he was experiencing
5  bloody noses, headaches, shortness of breath and chest pain.  He explained that his officers had a
6  corrupt system where they pay foodservers to place specific food trays aside to give to inmates
7  who file complaints.  Godina stated, "We don't like rats here at Corcoran."  Godina denied the 602
8  appeal.

9  On November 1, 2014, Godina and Sergeant Fritz authorized a massive cell search.
10  Melgar took Plaintiff's personal television and dragged it down the stairs.  Plaintiff asked, "Why
11  did you take my TV? It was on my books."  Melgar replied, "That's what happens when you 602
12  Rodriguez."

13  On November 3, 2014, Defendant Rodriguez was doing transport in Building 2.  Plaintiff
14  asked Rodriguez for a confiscation slip and he replied, "No."  Plaintiff asked him to sign his
15  CDCR-22 form for a request for cell search and he said, "You wanna push paperwork this is what
16  happens.

17  On November 5, 2014, Plaintiff filed a 602 appeal alleging he suffered reprisals for filing
18  602 appeals.  His television was destroyed by Defendant Rodriguez before his 30 day window to
19  appeal the confiscation expired.  Rodriguez falsified the confiscation slip stating he mailed it to
20  Plaintiff's home.

21  From November 5, 2014, until February 5, 2015, Plaintiff was transferred to a less secured
22  yard due to good behavior.  While there, he received the same two food trays and each time he and
23  a witness became nauseated and sick.  On one occasion he passed out.  He was then moved next
24  door to 3C-Yard on February 5, 2015.

25  On July 12, 2015, Plaintiff noticed the same food tray because of the unique carvings on
26  the tray.  He stated he didn't want to eat so he showed his new cellmate in order that he could be a
27  witness.  The witness tried the food and he said he felt like his heart was skipping a beat and he
28  experienced shortness of breath.  Plaintiff asked the inmate to request a toxicology test but the

1    request was denied by Dr. Moon.

2          Plaintiff noticed another inmate had received a similar food tray and asked him if he had

3    filed paperwork or lawsuits. The inmate replied that he had. Plaintiff explained that he had been

4    poisoned and medical staff had been covering for officers.  The inmate stated he had been getting

5    poisoned and had stomach pains.  The inmate requested a toxicology report but Dr. Moon denied

6    him.

7          On March 20, 2015, the inmate was rushed to Mercy Hospital where he was diagnosed

8    with an infection and pancreatitis.  On March 22, 2015, he was diagnosed with an infection in his

9    gall bladder, and the gall bladder was removed.

10          Later, Plaintiff noticed black lumps on his stomach filled with pus.  He again filed a

11    medical request and asked Dr. Moon for a toxicology report.  Moon told Plaintiff to file a medical

12    slip.  Plaintiff did so but received no response.  Later, Dr. Moon was removed from practicing in

13    Facility 3C.

14          Plaintiff filed a complaint with the medical board attempting to challenge the policy or lack

15    thereof on how claims of poisoning and use of force are investigated.

16          Plaintiff states he has witnessed multiple officers give the food servers hand signals

17    directing them to give Plaintiff a tray which then made him sustain injury to his head and chest.

18    He has also witnessed other inmates refuse to take trays.

19          Plaintiff wrote two letters to the warden, Defendant Davey, notifying him that he was

20    being poisoned by staff members.  Plaintiff requested that Davey implement a policy to investigate

21    allegations of poisoning by the staff and inmates.  Plaintiff's parents also left messages with

22    Defendant Davey's receptionist.

23          Plaintiff complains he sustained a bacteria infection in his chest which led to long term

24    respiratory complications, shortness of breath and chest pain when he exercised.   He complains

25    that he has severe periodic abdominal pain throughout the day.  He also has severe migraines and

26    nosebleeds.

27          Plaintiff also claims retaliation by Defendant Melgar for unlawfully denying Plaintiff's

28    television on November 1, 2014 because Plaintiff had filed a 602 against Defendant Rodriguez.

7

1

**B.      Eighth Amendment Medical Care Claims**

2

**1.      Legal Standard**

3      Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

4 other federal rights by persons acting under color of state law.  *Nurre v. Whitehead*, 580 F.3d

5 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006);

6 *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 is not itself a source of

7 substantive rights, but merely provides a method for vindicating federal rights elsewhere

8 conferred."  *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012)

9 (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation

10 marks omitted).  To state a claim, Plaintiff must allege facts demonstrating the existence of a link,

11 or causal connection, between each defendant's actions or omissions and a violation of his federal

12 rights.  *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013);

13 *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

14      While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical

15 care, the Eighth Amendment is violated only when a prison official acts with deliberate

16 indifference to an inmate's serious medical needs.  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.

17 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir.

18 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091,

19 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that

20 failure to treat [his] condition could result in further significant injury or the unnecessary and

21 wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately

22 indifferent."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).  Deliberate indifference is

23 shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need,

24 and (b) harm caused by the indifference."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at

25 1096).  The requisite state of mind is one of subjective recklessness, which entails more than

26 ordinary lack of due care.  *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*,

27 680 F.3d at 1122.

28

1          **2.          Findings**

2          As stated in its prior screening order, the Court assumes the truth of Plaintiff's underlying

3   allegations regarding food tampering, *Hebbe*, 627 F.3d at 342.  However, as previously discussed,

4   this action is brought against medical staff for failing to provide Plaintiff with adequate care for

5   his resulting medical problems and the record, which includes Plaintiff's allegations, Defendants'

6   appeal responses, and Plaintiff's medical records that were previously attached, undercuts his

7   allegation that he was provided with inadequate care.  To the contrary, the record, which the Court

8   carefully considered in full, evidences nothing more than Plaintiff's disagreement with the course

9   of treatment chosen by his treating physicians, which does not support a claim for relief under the

10  Eighth Amendment.  *Snow*, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at 1122-23.

11         While the Court can empathize with Plaintiff's concern for his health and his frustration,

12  there is simply no factual support for any viable Eighth Amendment claims against Defendants

13  Yu, Clark, Rouch, Convalecer, and Monfore for acting with deliberate indifference to Plaintiff's

14  medical needs, and he fails to state a claim against them.

15         **C.          Defendants Davey, Hicks, Rodriguez, Melgar, Marin, Castillo, Godina, and**

16              **Casey**

17         While Plaintiff's Second Amended Complaint seeks relief against medical staff for failing

18  to provide him with adequate medical care, Plaintiff also attempts to bring new claims against new

19  Defendants Davey, Hicks, Rodriguez, Melgar, Marin, Castillo, Godina, and Casey.  Plaintiff's

20  claims are premised on allegations that the above employees are poisoning Plaintiff or allowing

21  him to be poisoned.  Plaintiff seeks an order requiring investigation into his claims of poisoning,

22  and to direct employees to stop tampering with Plaintiff's packages and poisoning Plaintiff.  In

23  addition, Plaintiff attempts to bring a retaliation claim against Defendant Melgar for seizure of his

24  television.

25         There is insufficient factual support for Plaintiff's conclusory allegations that Defendants

26  poisoned Plaintiff or were aware that he was being poisoned but failed to intervene.  *Crowley v.*

27  *Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and*

28  *Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915-16

1    (9th Cir. 2012) (en banc).  In any case, Plaintiff was specifically informed that "this action is not

2    proceeding against correctional staff for poisoning Plaintiff and therefore, any attempt to impose

3    liability . . . for failing to intervene in those acts fails as a matter of law." (Doc. # 16, p. 8.)  In the

4    second screening order, Plaintiff was advised that he "may not change the nature of this suit by

5    adding new, unrelated claims in his second amended complaint. *George v. Smith*, 507 F.3d 605,

6    607 (7th Cir. 2007)." (Doc. #16, p. 8.)  Therefore, Plaintiff's additional claims and defendants must

7    be dismissed.

8    **IV.     Motion for Preliminary Injunction**

9           On January 19, 2016, Plaintiff filed a motion seeking a preliminary injunction directing all

10   Defendants and their employees to cease poisoning Plaintiff's canteen, packages and food trays.

11   He also requests that he be transported to an independent medical facility for a full toxicology

12   screening, full bloodwork, stool panel and physical test.  Further, he asks for a n order restraining

13   Defendants from opening his packages and directing his food packages be poisoned.

14          As discussed above, Plaintiff fails to state a cognizable claim under 28 U.S.C. § 1983, and

15   the action will be dismissed with prejudice.  In addition, the Court has previously advised Plaintiff

16   that this action is not proceeding on his claims of poisoning, and therefore, the Court is without

17   jurisdiction to issue the relief he requests.

18   **V.     Conclusion and Order**

19          Plaintiff's amended complaint fails to state a claim upon which relief may be granted under

20   section 1983.  Plaintiff was previously given leave to amend to cure the deficiencies but he was

21   unable to do so, and based on the nature of the deficiencies, further leave to amend is not

22   warranted.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d

23   1122, 1130 (9th Cir. 2000).  Accordingly, it is HEREBY ORDERED that:

24          1.     Plaintiff's motion for preliminary injunction is DENIED;

25          2.     This action is DISMISSED, with prejudice, for failure to state a claim under section

26                 1983;

27          3.     The Clerk's Office shall enter judgment; and

28          4.     The dismissal of this action qualifies as a strike under 28 U.S.C. § 1915(g).  *Silva v.*

10

1    *Di Vittorio*, 658 F.3d 1090, 1098-99 (9th Cir. 2011).

2         This terminates this action in its entirety.

3

4    IT IS SO ORDERED.

5       Dated:    **March 11, 2016**                        /s/ *Dennis L. Beck*

6                                           UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28